THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CASE NO. 1:23-CR-254-GLR |
| | * | |
| SUSAN K. PATRICK, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |
| | ******* | |

**GOVERNMENT'S SENTENCING RESPONSE MEMORANDUM**

The Government submits the following response to address arguments made by the Defendant in her sentencing memorandum. It also submits a sealed supplement, to address matters that remain under seal.

**I.  The Defendant's Recommended Sentence Would Undermine General Deterrence**

The Defendant's sentencing memorandum recommends a sentence of probation or a period of home confinement—either of which would be a dramatic deviation from the recommended Guidelines range in this case, as established by the U.S. Sentencing Commission. And yet it does so while completely failing to address the *primary* consideration underlying the Guidelines for tax offenses: general deterrence. *See* U.S.S.G. ch. 2, pt. T, introductory cmt.[1]

The Government appreciates the restrictions of liberty attendant to a felony conviction, probation, and home confinement. But the simple truth is that none of those consequences deters would-be tax evaders. Policymakers and courts have repeatedly emphasized that general deterrence in tax cases is achieved through imprisonment. As stated by the Fourth Circuit:

---

[1] Instead, the Defendant focuses her argument on specific deterrence, arguing that the data supports the conclusion that there is a low likelihood that she will reoffend. The Government does not dispute that point. Very little, if any, of its sentence recommendation is based on a concern that the Defendant will reoffend.

"Without a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path." *United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2011); *see also id.* ("[T]he [Sentencing] Commission believes that there must be a real risk of actual incarceration for the Guidelines to have a significant deterrent effect in tax evasion cases.").

Unlike the Defendant, the Court cannot ignore the question of general deterrence. Its sentence must send a message to would-be tax evaders that the pay-off is not worth the risk. The only way to do so is by imposing a meaningful term of imprisonment in line with the Government's recommendation. [2]

## II. The Defendant's Recommended Sentence Would Cause Unwarranted Sentencing Disparities

There are at least two types of potential sentencing disparities: (1) disparities in sentences for defendants who have committed the same type of offense, and (2) disparities in

---

[2]  This case has already generated significant media attention, e.g.:

- Anna Scott Farrell, *Feds Want 2 Years For Media Broker Who Hid $19.5M From IRS*, Law360 (Dec. 5, 2023), https://www.law360.com/articles/1773671/feds-want-2-years-for-media-broker-who-hid-19-5m-from-irs

- Lukas I. Alpert, *Co-owner of Wyoming's Largest Radio Station Chain Pleads Guilty to $20 Million Tax Fraud*, MarketWatch (Sept. 1, 2023), https://www.marketwatch.com/story/co-owner-of-wyomings-largest-radio-station-chain-pleads-guilty-to-20-million-tax-fraud-8e95c3ce

- *Susan Patrick Resigns, Speaks Out After Tax Evasion Guilty Plea*, Radio INK (Sept. 5, 2023), https://radioink.com/2023/09/05/susan-patrick-resigns-speaks-out-after-tax-evasion-guilty-plea/

- Leo Wolfson & Greg Johnson, *Owner of Wyoming's Largest Radio Station Chain Admits Hiding $19.5 Million From IRS*, Cowboy State Daily (Sept. 2, 2023), https://cowboystatedaily.com/2023/09/02/owner-of-wyomings-largest-radio-station-chain-admits-hiding-19-5-million-from-irs/

sentences for defendants who have committed different but morally similar crimes. The Guidelines are inherently concerned with the former, but the Guidelines for tax offenses were expressly constructed to address the latter.

Specifically, as discussed in the Government's Sentencing Memorandum, ECF No. 23 at 13-14, in setting the Guidelines for tax and other white-collar offenses, the Sentencing Commission was animated by significant sentencing discrepancies between white-collar offenses and similar *non* white-collar offenses. *Id.* (citing Stephen Breyer, "The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest," 17 HOFSTRA L. REV. 1, 20 (1988)). The Commission's conclusions were clear: white-collar offenders were getting off easy, receiving probation and much shorter prison sentences when compared with analogous non white-collar offenders. *Id.*

The Defendant's sentencing memorandum does not address this concern, and its recommended sentence of probation (or a short period of home confinement) would actively undermine the Sentencing Commission's goal of eliminating this particularly troubling type of disparity. *See United States v. Levinson*, 543 F.3d 190, 201 (3d Cir. 2008) ("[I]t has been noted that probationary sentences for white-collar crime raise concerns of sentencing disparities according to socio-economic class.").[3]

The Government's recommended sentence would also not lead to unwarranted sentencing disparities as compared to other tax offenders. Notably, the sentencing data cited by the Defendant pre-dates the current version of the Guidelines and the creation of § 4C1.1. Had the Defendant been sentenced between 2016 and 2022, her total offense level would have been

---

[3] The Defendant's claim that she should receive significant leniency in part because she has made substantial financial donations to charity is illustrative of how such discrepancies become manifest. While significant financial support for charity is admirable, it is a mitigating factor that only financially well-off offenders can rely upon.

19. According to the Sentencing Commission's Judiciary Sentencing Information ("JSIN") data, between 2018 and 2022 there were 76 defendants whose primarily guideline was § 2T1.1 and who had a final offense level of 19 and a Criminal History Category of I. Gov't Ex. 11. Of those who received a prison sentence, the median length of imprisonment was 21 months. *Id.* Moreover, the egregious nature of the Defendant's offense, as detailed in the Government's sentencing memorandum, provides ample reason for why a within Guidelines sentence is appropriate and not an unwarranted disparity.

**III.    The Defendant's Medical Conditions Do Not Warrant a Downward Variance**

During the Probation Office's presentence investigation, the Defendant stated that she "is in good physical health." PSR ¶ 40. She described that she had never been hospitalized (except following a caesarean section while giving birth), and that she takes prescribed medication to manage her blood pressure and cholesterol. *Id.*

Additional medical concerns have apparently emerged since her interview. The Defendant now needs "consistent professional medical treatment," and is "at an increased risk of severe illness and death if incarcerated." Def. Mem. at 22-24.

The Defendant attributes most of this risk to the possibility of contracting COVID-19 while incarcerated. Unmentioned is whether or not she has ever previously contracted COVID-19 in the more than three years since the onset of the pandemic and whether she endured serious complications as a result. In any event, while COVID-19 continues to pose a health threat, the availability of vaccines (which the Defendant has received) and other treatments significantly reduces the associated risk that incarceration imposes, including for those with other medical conditions that place them at elevated risk. *See United States v. Barbee*, 25 F.4th 531, 533 (7th Cir. 2022).

The Defendant also cites U.S.S.G. § 5H1.4.[4] But "[a] departure under U.S.S.G. § 5H1.4 is warranted only for 'extraordinary' physical impairments." *United States v. Cyprowski*, 173 F.3d 426, 1999 WL 95516 at *2 (4th Cir. 1999) (unpublished); *see United States v. Tocco*, 200 F.3d 401, 435 (6th Cir. 2000) ("[I]t is possible 'that an aged defendant with a multitude of health problems may qualify for a downward departure under § 5H1.4 . . . , [but] such downward departures are rare.'" (second alteration in original) (citation omitted)). The Defendant has not made the required showing.

## IV. Conclusion

For the reasons stated herein and in the sealed supplement, the Court should reject the Defendant's sentencing recommendation and instead sentence the Defendant to 24 months' imprisonment, followed by 1 year of supervised release.

Respectfully submitted,

David A. Hubbert
Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

_____
Matthew L. Cofer
Trial Attorney
Thomas F. Koelbl
Assistant Chief
U.S. Department of Justice, Tax Division

---

[4] In the plea agreement in this case, the Defendant agreed that other than the stipulated Guidelines factors agreed to between the parties, no other "potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute." Plea Agreement, ECF No. 13 ¶ 8.

## CERTIFICATE OF SERVICE

      I hereby certify that on December 14, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification to counsel of record for the defendant.

                                                                       Matthew L. Cofer
                                                                       Trial Attorney